ANDREW MAST (CSBN 284070)
GABRIEL MARTINEZ (CSBN 275142)
MICHAEL RABKIN (ILRN 6293597)
ALBERT SAMBAT (CSBN 236472)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
micahel.rabkin@usdoj.gov
Telephone: (415) 934-5300

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES DOHERTY,<br><br>Defendant. | CASE NO. CR 11-00797<br><br>**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §5K1.1** |

    The United States respectfully requests that this Court sentence defendant JAMES DOHERTY to (1) serve six months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $4,000, a $100 special assessment, and $5,500 in restitution. This sentencing recommendation is based on the government's motion for a downward departure of 30 percent from the low end of the Guidelines range for substantial assistance and is consistent with the parties' plea agreement.

//

# BACKGROUND

Defendant James Doherty is charged with participating in the conspiracy in San Francisco County from November 2008 through January 2011. Dkt. 1. During that time, Doherty purchased foreclosed properties both independently and with combined resources from other bidders. Presentence Report ("PSR") ¶ 15.

Doherty received his real-estate license in 2005 and began attending foreclosure auctions for his father's company, James J. Doherty, Inc. PSR ¶ 16. In 2008 and 2009, the number of foreclosures increased and Doherty began purchasing four to five properties per month. *Id.* He later started Parkside Investments. *Id.* Doherty partnered with co-conspirators Joe Giraudo, Ray Grinsell, and Mo Rezaian. *Id.* Doherty knew that his partners were paying and taking money not to bid, and that included taking money on properties in which he was a partner. *Id.* Doherty would not get involved in the payoff agreements other than paying his share of the money as directed by Giraudo or Rezaian. *Id.*

For example, on February 16, 2010, Doherty attended the auction for a property located at 227-229 Arguello in San Francisco. PSR ¶ 17. Doherty believed there were too many bidders so he would not win the auction. *Id.* Doherty decided to partner with Giraudo and Rezaian on the property, and they brought in other partners. *Id.* At one point, Giraudo and Rezaian told Doherty that they had paid another co-conspirator, Lydia Fong, to stop bidding, and Doherty made a note that each of eight partners owed Fong $625 apiece. *Id.*

Doherty participated in rigging the sale of twelve properties. PSR ¶ 18. As stipulated in his plea agreement, Doherty's volume of commerce is $799,869. The volume of commerce does not reflect the bid rigging agreements that Doherty made in which he received payoff money. Doherty and his partners received $51,500 in payoffs for agreeing not to bid on three properties, resulting in Doherty personally receiving $5,500 in payoff money. *See id.* ¶¶ 18, 21.

On October 27, 2011, Doherty was charged by information with bid rigging and mail fraud in San Francisco County. Dkt. 1. On January 11, 2012, Doherty pleaded guilty to both charges and began cooperating with the government's investigation. Dkt. 12. On October 6,

//

U.S.' SENT'G MEMO                                              2
*United States v. Doherty*, CR 11-00797 CRB

2017, defendant withdrew from his original plea agreement by stipulation and entered a new plea agreement to the bid-rigging charge only.  Dkt. 55-58.

## ARGUMENT

**A.     Sentencing Guidelines Calculations**

### 1.     Criminal History

In Paragraph 12 of the plea agreement, the parties agree that Doherty's Criminal History Category is determined by the Court.  Dkt. 56.  The Presentence Report ("PSR") calculates Doherty's Criminal History Category as I, based on no criminal history.  PSR ¶¶ 35-39.

### 2.     Offense Level

The PSR calculates the total offense level as 11, consistent with the plea agreement.  PSR ¶ 34.  This calculation includes a one-level increase to the base offense level of 12 for conduct involving the submission of non-competitive bids, and a downward reduction of two levels for acceptance of responsibility.  PSR ¶¶ 26-34.  U.S. Sentencing Guidelines Manual ("U.S.S.G.") §§2R1.1(b)(1) and 3E1.1(a) (U.S. Sentencing Comm'n 2016).

Under the Sentencing Guidelines, an offense level of 11 and Criminal History Category of I results in a sentence ranging from 8 to 14 months of imprisonment.

### 3.     Fine and Restitution

The PSR calculates a fine range of $20,000 to $39,993, consistent with the plea agreement.  PSR ¶ 77; U.S.S.G. §2R1.1(c)(1) (fine range shall be from one to five percent of the volume of commerce, but not less than $20,000).  In the plea agreement, the government agreed to recommend a fine between $4,000 and $40,000.  Dkt. 56.  This fine range was initially agreed to by the parties in the original plea agreement, based on the application of the fraud Guidelines, and was carried over to the revised plea agreement.  In conjunction with its custodial recommendation, the government recommends a $4,000 fine.

The government recommends restitution in the amount of $5,500, consistent with the plea agreement.  Dkt. 56.  This is based on evidence that Doherty personally received $5,500 from payoff agreements.  PSR ¶ 21.

//

B.     **Basis for Downward Departure for Substantial Assistance**

Pursuant to Section 5K1.1 of the Guidelines, the government moves for a downward departure for substantial assistance to the investigation. The government recommends a 30 percent reduction from the low end of the Guidelines range of eight months, resulting in a sentence of six months.

The timing, significance, nature and extent of Doherty's cooperation warrant a 30 percent reduction. Doherty entered his plea agreement pre-indictment on January 11, 2012, and immediately began cooperating in the investigation. Doherty was one of the earliest pleading defendants. His plea may have influenced the decisions of defendants who pleaded after him to also plead guilty and accept responsibility.

Additionally, Doherty provided a candid interview with the FBI. During his interview, Doherty provided corroborating information regarding the operation of the conspiracy, the conduct of other conspirators, and various bid-rigging agreements. During his interview, Doherty also provided information explaining documents provided by his real estate company that documented payoffs. And Doherty made himself readily available to the prosecution team in the event he would be needed for further information or potential testimony.

For these reasons, a 30 percent downward departure for substantial assistance to the investigation and prosecution of these cases is appropriate.

C.     **Sentencing Recommendation**

The government's recommendation of six months is reasonable and not greater than necessary in light of the factors articulated in 18 U.S.C. § 3553. The Court's sentence must reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence to future bid-rigging offenses and white-collar crime generally.

Given the magnitude of the financial harm caused by Doherty's conduct, the government's recommendation, which includes a custodial term, is appropriate and consistent with the commentary in the applicable Guidelines. The commentary makes clear that "prison terms for [Antitrust] offenders should be . . . common" and "alternatives such as community confinement [should] not be used to avoid imprisonment of antitrust offenders." U.S.S.G.

§2R1.1, cmt. n. 5 & Background.  Given Doherty's substantial assets, a fine alone—in the absence of a custodial term—would not serve as an adequate deterrent.  The foreclosure auctions were vulnerable to bid rigging, especially in the aftermath of the foreclosure crisis, when the auctions were flooded with investment opportunities.  Doherty did not originate the conspiracy, but he joined in willingly.

The government's recommended sentence also adequately considers the history and characteristics of defendant, including his early decision to accept responsibility, his willingness to pay restitution and cooperate in the investigation, and his lack of a prior criminal history.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant the government's motion for a downward departure of 30 percent from the low end of the Guidelines range for substantial assistance and sentence defendant James Doherty to (1) serve six months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $4,000, a $100 special assessment, and $5,500 in restitution.

Dated:  April 19, 2018                           Respectfully submitted,

/s/
MICHAEL RABKIN
Trial Attorney
United States Department of Justice
Antitrust Division